# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Elaine E. Bucklo | Sitting Judge If Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 8703 | **DATE** | 9/30/2002 |
| **CASE TITLE** | Deal vs. Prudential Insurance | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order denying plaintiff's motion for summary judgment. Pretrial order is due by10/18/02. Pretrial conference set for 10/16/02 is reset for 10/24/02 at 2:30 p.m.

(11) ☐ [For further detail see order (on reverse side of/attached to) the original minute order.]

| | No notices required, advised in open court. | | 2 number of notices | Document Number |
|---|---|---|---|---|
| | No notices required. | | | |
| ✓ | Notices mailed by judge's staff. | | OCT 0 1 2002 date docketed | 22 |
| | Notified counsel by telephone. | | | |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | U.S. DISTRICT COURT CLERK | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | 9/30/2002 | |
| MPJ | courtroom deputy's initials | 2 SEP 30 PM 4:31 Date/time received in central Clerk's Office | date mailed notice MPJ mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

CATHI DEAL, )
)
Plaintiff, )
)
v. ) No. 01 C 8703
)
PRUDENTIAL INSURANCE COMPANY OF )
AMERICA, )
)
Defendant. )

DOCKETED

OCT 0 1 2002

## MEMORANDUM OPINION AND ORDER

Plaintiff Cathi Deal sued defendant Prudential Insurance Company of America ("Prudential") under section 1132(a)(1)(B) of ERISA, 29 U.S.C. § 1001 *et seq.*, to recover benefits due under an employee benefit plan ("Plan") underwritten and insured by Prudential. Ms. Deal now moves for summary judgment or, in the alternative, judgment based on findings of fact and conclusions of law in her favor made pursuant to Fed. R. Civ. P. 52. I deny the motion.

I.

Ms. Deal was employed as a human resources director, administrative assistant, and office manager by Telephone & Data Systems, Inc. until June 1998 when she suffered an injury to her left knee in an elevator accident. Ms. Deal returned to work briefly until the end of November 1998. In February 2000, Ms. Deal

filed a claim for long term disability payments based on her knee injury. Her claim was approved by Prudential, and in May 2000 she began receiving benefits, including retroactive payments from December 1998 onward.

Ms. Deal saw a host of medical professionals for both physical and psychological conditions arising out of her knee injury and associated pain. She was diagnosed with Moderate Major Depressive Disorder. In October 2000, Prudential notified Ms. Deal that her initial period of benefits would expire in December, and that it would conduct an evaluation to determine Ms. Deal's eligibility for continued benefits.

In April 2001, Prudential determined that Ms. Deal was no longer eligible for benefits under the Plan. Ms. Deal appealed this decision, submitting additional medical reports with her appeal. Her appeal was denied in September 2001. She submitted an appeal to this decision in October 2001, which again was denied by Prudential. In November 2001, Ms. Deal initiated this lawsuit.

II.

I may grant summary judgment only where "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "In determining whether a genuine issue of material fact exists, [I] construe all facts in the light most favorable to the nonmoving

party and draw all inferences in that party's favor." *Popovits v. Circuit City Stores, Inc.*, 185 F.3d 726, 731 (7th Cir. 1999) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

A.

Ms. Deal asks me to overturn Prudential's determination to terminate her benefits. A denial of benefits challenged under ERISA is subject to plenary (*de novo*) review when the plan documents contain no indication of the scope of judicial review. *See Herzberger v. Standard Ins. Co.*, 205 F.3d 327, 330 (7th Cir. 2000) (citing *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101 (1989)). When plan documents confer discretionary judgment on an administrator, decisions of the administrator are reviewed under an "arbitrary and capricious" standard. *See Postma v. Paul Revere Life Ins. Co.*, 223 F.3d 533, 538 (7th Cir. 2000). A plan can specify that the administrator has discretion in interpreting or applying it, but that specification must be "ma[de] clear." *Herzberger*, 205 F.3d at 331. The Seventh Circuit has suggested "safe harbor" language to be used in plans that wish to retain discretion in their administrators: "Benefits under this plan will be paid only if the plan administrator decides in his discretion that the applicant is entitled to them." *Id.* Here, the relevant policy language[1] states:

---

[1] The other policy provision relevant to my decision involves a limitation on total disability benefits that applies "if [the employee's] Disability, as determined by Prudential, is caused at

3

> "Total Disability" exists when Prudential determines that all of these conditions are met:
>
> 1. Due to Sickness or accidental injury, both of these are true.
>
>> a. You are not able to perform, for wage or profit, the material and substantial duties of your occupation.
>>
>> b. After the Initial Duration of a period of Total Disability, you are not able to perform for wage or profit the material and substantial duties of any job for which you are reasonably fitted by your education, training or experience.

(R. at 00164.) This policy language does not include the "safe harbor" language set out by the Seventh Circuit. The court noted, however, that an absence of the "safe harbor" language does not require plenary review if the plan indicates with the requisite clarity that a discretionary determination is envisaged. *See Herzberger*, 205 F.3d at 331.

Prudential argues that the language "when Prudential determines" followed by a list of elements to be determined clearly indicates that Prudential shall exercise its discretion. However, the fact that a plan requires a determination of eligibility by an administrator does not give an employee adequate notice that the administrator's decision will be discretionary. *Id.* at 332. As the Seventh Circuit notes:

---

least in part by a mental, psychoneurotic or personality disorder." (R. at 00167.) Neither party cites this provision in their discussion of the standard of review, but my discussion applies to this language as well.

4

> Obviously a plan will not--could not, consistent with its
> fiduciary obligation to the other participants--pay benefits
> without first making a determination that the applicant was
> entitled to them. The statement of this truism in the plan
> document implies nothing one way or the other about the scope
> of judicial review of his determination.

*Id.* In *Herzberger*, the court remanded for plenary review a case in which the plan documents indicated that "'Total Disability' exists when [the plan administrator] determines that all of these conditions are met" followed by a list of what the court called objective elements. *Id.* at 333.

Nonetheless, if the elements that the administrator is to determine are subjective elements "over which discretionary power could be presumed," the plan may give adequate notice of discretionary authority. *Id.* Even if the elements that Prudential is to consider in determining total disability can be called subjective, they are not so clearly subjective as to create a presumption that Prudential would exercise broad discretion in determining whether an employee was totally disabled. If a plan wishes "to reserve a broad, unchanneled discretion to deny claims, the employees should be told about this, and told clearly." *Id.* The policy language here does not clearly notify employees that Prudential retains broad discretion to deny their claims. *Cf. Gerlib v. R.R. Donnelley & Sons Co.*, No. 95 C 7401, 2001 WL 1313794, at *6 (N.D. Ill. Oct. 26, 2001) (Kennelly, J.) (finding sufficient administrator discretion where plan gave administrator

"authority to construe and interpret the Plan, decide all questions of eligibility and determine the amount, manner and time of payment of benefits"); *White v. Employee Ret. Plan of Amoco Corp.*, No. 96 CV 4298, 2000 WL 1221635, at *3 (N.D. Ill. Aug. 21, 2000) (Holderman, J.) (finding sufficient administrator discretion where plan gave administrators authority "[t]o interpret the Plan, to determine applicable facts, and to decide all matters arising under the Plan, including the right to exercise discretion to remedy possible ambiguities, inconsistencies, and omissions"); *Quinn v. Non-Contributory Nat'l Long Term Disability Program*, 113 F. Supp. 2d 1216, 1221 (N.D. Ill. 2000) (Shadur, J.) (finding sufficient administrator discretion where plan stated that the term "'[d]isabled' shall be based on medical evidence satisfactory to the Committee *in its sole discretion*") (emphasis added).

Several other district courts examining identical Prudential policy language have determined that the policy here does not clearly indicate that discretion has been retained in the Plan administrators (and administrator decisions are therefore subject to plenary review). *See Ehrman v. Henkel Corp. Long-Term Disability Plan*, 194 F. Supp. 2d 813, 818 (C.D. Ill. 2002) (citing *Herzberger*); *McDonald v. Timberland Co. Group Long Term Disability Coverage Program*, No. CIV 98-686-M, 2002 WL 122382, at *3 (D.N.H. Jan. 23, 2002) (citing *Herzberger*); *Rothstein v. Prudential Life Ins. Co.*, No. CV0011329SVWAIJX, 2001 WL 793130, at *2-3 (C.D. Cal.

July 10, 2001); *O'Sullivan v. Prudential Life Ins. Co.*, No. 00 Civ. 7915(KNF), 2001 WL 727033, at *3-4 (S.D.N.Y. June 28, 2001) (citing *Herzberger*).

*De novo* review requires me to determine whether the decision of the administrator was "incorrect," *Herzberger* 205 F.3d at 329, and in doing so I am not limited to considering evidence that was before the plan administrator, *see Casey v. Uddeholm*, 32 F.3d 1094, 1099 n.4 (7th Cir. 1994).

B.

Prudential makes two arguments for terminating Ms. Deal's benefits. First, it argues that she no longer falls within the definition of total disability. Second, it argues that her disability was caused at least in part by a mental condition, allowing Prudential to terminate benefits after 24 months.

1.

According to the Plan documents, a total disability exists where an employee is unable to perform the material and substantial duties "of any job for which [she is] reasonably fitted by [her] education, training or experience." (R. at 00164.) Prudential argues that Ms. Deal is able to perform sedentary work on a full-time basis. Ms. Deal argues that looking at whether she could perform sedentary work is the wrong standard to apply because total disability under the Plan requires that she be unable to perform *any* job for which she is reasonably fitted. A consultant's job

7

analysis of Ms. Deal's position determined that her position was "essentially a sedentary office position."[2] (R. at 00698.) Because her former position was sedentary, if she is capable of performing sedentary work following her injury, she is capable of performing work for which she is reasonably fitted by her education, training, or experience, and does not fall within the definition of total disability under the Plan.

Ms. Deal points to testimony of Dr. Finn, one of her physicians, in which he states that it would be difficult for her to travel back and forth to work. (R. at 00804.) Dr. Finn admitted that it would be feasible for her to do sedentary work out of her home such as telemarketing; however, it was his opinion that

> "anything she has to do other than the activities of daily living to keep herself alive, go to the grocery store, whatever you need to do to live, is all that she should be asked to do because anything else to support herself adds physical and psychological stress in my opinion. So I feel she is permanently disabled from work."

(R. at 00804-05.)

Additionally, the physician hired by Prudential to examine Ms. Deal, Dr. Anthony Brown, reported that "[t]here would appear to be no reasonable way to allow this patient to work, even in a

---

[2] In her response to Prudential's statement of facts, Ms. Deal challenges the findings of the consultant's analysis that her position was sedentary (Pl.'s Resp. to Def.'s Statement of Facts ¶ 4.) However, in her own statement of facts, she describes her job as "sedentary," citing the same consultant's report. (Pl.'s Statement of Facts ¶ 12). Regardless, reading disputed facts in the light most favorable to Prudential, I assume her position was sedentary.

sedentary capacity." (R. at 00416). Nonetheless, Prudential points to a fax it received from Dr. Finn confirming to Prudential that "Ms. Deal is capable of sedentary work for a full time, 8 hour work day." (R. at 00210.). Dr. Finn's medical reports also indicate that her x-rays "look fine" and that she is "much better." In another report, however, Dr. Finn indicated that he supported Ms. Deal going on full disability because "her knee is so problematic and her other knee is symptomatic." (R. at 00960.)

This evidence presents a material issue of genuine fact as to whether Ms. Deal falls within the definition of total disability under the Plan. The issue here is whether Ms. Deal could perform any job for which she is reasonably fitted, including sedentary work. Dr. Finn at one time indicated that Ms. Deal could perform sedentary work on a full-time basis. He later stated that he supported Ms. Deal going on full disability and that she was permanently disabled from work. Certainly one possible reading of this evidence is that Dr. Finn changed his diagnosis, and feels that Ms. Deal is no longer capable of performing sedentary work. However, his later statements are not inconsistent with his statement to Prudential that Ms. Deal was capable for performing full time sedentary work. In fact, he admitted that it would be feasible for Ms. Deal to perform such work out of her home. The issue is whether Ms. Deal is totally disabled under the definition

of the Plan, not whether Dr. Finn feels that Ms. Deal is totally disabled or is entitled to disability benefits.[3]

Dr. Brown's statement that Ms. Deal is unable to perform even sedentary work certainly supports her contention that she falls within the Plan's definition of total disability. On summary judgment, however, I do not weigh evidence, but simply determine whether a material question of fact exists. *See Szymanski v. Rite-Way Lawn Maint. Co., Inc.*, 231 F.3d 360, 364 (7th Cir. 2000). Dr. Finn reported that Ms. Deal could perform sedentary work on a full-time basis. If true, she is not disabled under the Plan definition. Whether Dr. Finn no longer agrees with this statement or whether these statements are simply wrong is a question for the finder of fact.

2.

The Plan also contains a Benefit Limitation section that applies "if [the employee's] Disability, as determined by Prudential, is caused at least in part by a mental, psychoneurotic or personality disorder." In that case, benefits are not payable

---

[3] Nor is the issue whether Ms. Deal's disability "prevent[s] [her] from doing any gainful activity" under Social Security regulations, 20 C.F.R. § 404.1525, despite Ms. Deal's claims that such regulations are "instructive" to ERISA cases under *Halpin v. W.W. Grainger, Inc.*, 962 F.2d 685, 695 n.11 (7th Cir. 1992). *Halpin* simply noted that standards used in adjudicating social security cases may be instructive in ERISA cases. *See id.* It said nothing about the instructiveness of applying Social Security Regulations to ERISA cases.

10

for more than 24 months.[4] (R. at 00167.) Ms. Deal argues that Prudential is precluded from raising this issue because it did not refer to her psychological problems as the basis for terminating benefits until this lawsuit. She correctly notes that ERISA and accompanying regulations require plan administrators to set forth specific reasons for the denial of benefits. See 29 U.S.C. § 1133(1); 29 C.F.R. § 2560.503-1(g). The purpose of these requirements is to allow an employee who has been denied benefits a "fair chance" to appeal and allow "meaningful review" of the decision. See Halpin v. W.W. Granger, Inc., 962 F.2d 685, 689 (7th Cir. 1992).

However, Prudential has raised the issue before now. In its original termination of benefits, Prudential quoted the policy language regarding mental disorders, and stated that "[w]ith regards to your diagnosis of depression, the provision of [the policy] that states there is a 24 month benefit limitation on disability caused at least in part by a mental, psychoneurotic or personality disorder is outlined above. This 24 month benefit limitation ended on December 19, 2000." (R. at 00204-06.) Ms. Deal appealed the decision, and in its first denial of her appeal, Prudential again quoted the policy language regarding mental disorders and stated "Ms. Deal has a diagnosis of depression. The benefit limitation expired on December 19, 2000. She has already

---

[4] The Plan goes on to give two exceptions not relevant here.

been paid through the maximum duration of benefits eligible under that diagnosis." (R. at 00129-30.)

These statements in Prudential's denials of benefits put Ms. Deal on notice that Prudential was relying at least in part on the benefits limitation language regarding mental disorders when making its decision to terminate benefits. This is not simply a case of Prudential presenting a *post hoc* rationale in order to avoid reversal upon judicial review, see *Halpin*, 962 F.2d at 696, and Prudential is thus not precluded from arguing this issue.

Prudential cites numerous doctors' reports explaining Ms. Deal's psychological problems. Evidence of a mental disorder is not enough, however, to trigger the benefit limitation clause. In order for the benefit limitation to apply, the mental disorder must cause, at least in part, the physical disability. Two of the reports cited by Prudential could support a finding of causation.

First, Dr. Caryn Feldman, a psychologist, reported after examining Ms. Deal that "Ms. Deal appears caught in a vicious cycle where pain and depression lead to decreased activity which serves to increase deconditioning and depression, which may aggravate physical symptoms further." (R. at 00523.) Second, after a health psychology evaluation with Ms. Deal, Dr. Melanie Aoki reported that unless her depression and anxiety were directly addressed, her response to medical treatment for her knee pain would likely be compromised. (R. at 00233.)

Ms. Deal responds that these reports relate to treatment prior to her most recent surgery, that the mental health issues "have evidently been resolved" while the physical problems remain, and that depression was secondary to the severe knee pain. (Pl.'s Reply at 8.) The claim that depression was secondary to the physical pain is irrelevant, because the mental disorder need only cause "in part" the employee's disability. There is no requirement that it be the primary cause of the disability. With respect to the argument that the psychological reports are old and the mental health issues have been resolved, Ms. Deal cites no support from the record and does not contest the contents of Dr. Feldman's or Dr. Aoki's reports. At the very least, these reports create a genuine issue as to whether Ms. Deal's psychological issues caused in part her disability.

III.

As an alternative to summary judgment, Ms. Deal asks that I enter findings of fact and conclusions of law pursuant to Rule 52, and enter judgment in her favor based on those findings. Rule 52 applies to bench trials. A ruling on cross-motions for summary judgment may amount to a bench trial if I find that there are disputed factual issues but decide them based on the fully developed record. *See Lac Courte Oreilles Band of Lake Superior Chippewa Indians v. Voigt,* 700 F.2d 341, 349 (7th Cir. 1983). Here, although Ms. Deal styled her reply as a response to a cross-

motion, Prudential has not filed a cross-motion for summary judgment. Because I find disputed factual issues, Prudential is entitled to a trial on the merits, and I cannot at this time make Rule 52 findings and enter a judgment.

IV.

Ms. Deal's motion for summary judgment, or in the alternative for judgment based on findings of fact and conclusions of law made pursuant to Rule 52, is DENIED.

ENTER ORDER:

**Elaine E. Bucklo**
United States District Judge

Dated: September 30, 2002