

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Elaine E. Bucklo | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 8703 | **DATE** | 5/22/2003 |
| **CASE TITLE** | Deal vs. Prudential Insurance Co. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] The court finds that because Ms. Deal has shown that she has a total disability under the plan definition, and Prudential has failed to show that any benefit limitation applies, Ms. Deal is entitled to benefits under the plan. Prudential is ordered to pay benefits retroactively from July 2001 plus 4.92 % interest, and to continue paying benefits as long as Ms. Deal remains eligible. Additionally, Ms. Deal's request for attorneys' fees is granted. Enter Memorandum Opinion and Order.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | 2 number of notices | **Document Number** |
| | No notices required. | | | |
| ✓ | Notices mailed by judge's staff. | | MAY 23 2003 date docketed | 42 |
| | Notified counsel by telephone. | | | |
| | Docketing to mail notices. | | docketing deputy initials | |
| | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | | 5/22/2003 date mailed notice | |
| MPJ | courtroom deputy's initials | | MPJ mailing deputy initials | |
| | | Date/time received in central Clerk's Office | | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

CATHI DEAL,                        )
                                   )
            Plaintiff,             )
                                   )
    v.                             )
                                   )  No. 01 C 8703
PRUDENTIAL INSURANCE COMPANY OF    )
AMERICA,                           )
                                   )
            Defendant.             )

MAY 23 2003

**MEMORANDUM OPINION AND ORDER**

Plaintiff Cathi Deal sued defendant Prudential Insurance Company of America ("Prudential") under section 1132(a)(1)(B) of ERISA, 29 U.S.C. § 1001 et seq., to recover benefits under an employee benefit plan ("Plan") underwritten and insured by Prudential. Following a paper trial in which both sides submitted trial briefs and presented oral arguments, I find that Ms. Deal is entitled to benefits under the Plan.

I. Background

Ms. Deal was employed as a human resources director, administrative assistant, and office manager by Telephone & Data Systems, Inc. until June 1998 when she suffered an injury to her left knee in an elevator accident. Ms. Deal returned to work briefly until the end of November 1998. In February 2000, Ms. Deal filed a claim for long term disability payments based on her knee injury. Her claim was approved by Prudential, and in May 2000 she

began receiving benefits, including retroactive payments from December 1998 onward.

Ms. Deal saw a host of medical professionals for both physical and psychological conditions arising out of her knee injury and associated pain. She was diagnosed with Moderate Major Depressive Disorder. In October 2000, Prudential notified Ms. Deal that her initial period of benefits would expire in December, and that it would conduct an evaluation to determine Ms. Deal's eligibility for continued benefits.

In April 2001, Prudential determined that Ms. Deal was no longer eligible for benefits under the Plan. Ms. Deal appealed this decision, submitting additional medical reports with her appeal. Her appeal was denied in September 2001. She submitted an appeal to this decision in October 2001, which again was denied by Prudential. In November 2001, Ms. Deal initiated this lawsuit.

## II. Eligibility for Benefits

As discussed in my decision denying summary judgment, Prudential's denial of benefits is not entitled to deferential review, but rather I examine the benefits determination *de novo* and may consider evidence not before the plan administrator. *Deal v. Prudential Ins. Co.*, 222 F. Supp. 2d 1067, 1068-70 (N.D. Ill. 2002). Claims for benefits brought under 29 U.S.C. § 1132(a)(1)(B) are essentially assertions of contractual rights under an employee benefit plan. *Tolle v. Carroll Touch, Inc.*, 977 F.2d 1129, 1133

2

(7th Cir. 1992). As such, "the employee must establish that she has satisfied the conditions necessary for benefits under the plan." *Robyns v. Reliance Standard Life Ins. Co.*, 130 F.3d 1231, 1235 (7th Cir. 1997) (internal quotation omitted).

A. Total Disability

Under the Plan, employees are entitled to benefits while they are totally disabled. (R. at 00164.) The Plan defines total disability as follows:

> "Total Disability" exists when Prudential determines that all of these conditions are met:
>
> 1. Due to Sickness or accidental injury, both of these are true.
>
>   a. You are not able to perform, for wage or profit, the material and substantial duties of your occupation.
>
>   b. After the Initial Duration of a period of Total Disability, you are not able to perform for wage or profit the material and substantial duties of any job for which you are reasonably fitted by your education, training or experience.
>
> 2. You are not working at any job for wage or profit.
>
> 3. You are under the regular care of a Doctor.

(R. at 00164.) Prudential initially agreed that Ms. Deal was totally disabled under this definition when it approved her claim for benefits on May 1, 2000. (R. at 00467-68.) Prudential subsequently determined that she was no longer entitled to continued benefits on April 18, 2001. (R. at 00204-07.) The issue before me now is whether Ms. Deal satisfied, and continues to satisfy, the conditions necessary for benefits under the Plan.

3

Prudential does not contest that Ms. Deal is not currently working and is under the regular care of a doctor. The only contested issue with respect to total disability is whether Ms. Deal is able to perform any job for which she is reasonably fitted. Dr. Anthony Brown, a physician chosen by Prudential to conduct an independent medical examination of Ms. Deal, concluded that "[t]here would appear to be no reasonable way to allow this patient to work, even in a sedentary capacity." (R. at 00416.) Prudential, however, points to an April 17, 2001 fax received from Dr. Henry Finn, one of Ms. Deal's physicians, confirming that "Ms. Deal is capable of sedentary work for a full time, 8 hour work day." (R. at 00210.) One week after the fax, however, Dr. Finn wrote in a letter to another of Ms. Deal's physicians:

> Her insurance company would like her to return to a sedentary job but I believe that her knee is so problematic and her other knee is symptomatic and it would be very difficult for her, even just to travel back and forth to work. I have told her this and I will support her going on full disability.

(R. at 00960.) While Dr. Finn later admitted that it would be feasible for her to do sedentary work out of her home such as telemarketing, (R. at 00804), he testified in a deposition that

> anything she has to do other than the activities of daily living to keep herself alive, go to the grocery store, whatever you need to do to live, is all that she should be asked to do because anything else to support herself adds physical and psychological stress in my opinion. So I feel she is permanently disabled from work.

(R. at 00805.) While this evidence created a genuine issue of material fact at the summary judgment stage, I now find that Ms.

4

Deal is totally disabled under the Plan definition. On summary judgment, I indicated that it was possible to read Dr. Finn's later comments consistently with his fax to Prudential indicating that Ms. Deal is capable of performing sedentary work on a full time basis. At this stage of litigation, however, I find that such a reading is not plausible. Reading Dr. Finn's deposition comments in context, he does not confirm the April 17 fax indicating that Ms. Deal can perform full time sedentary work. While Dr. Finn focused on the difficulty of commuting and admitted when asked that telemarketing out of her home would be feasible, he clarifies his opinion by indicating that she should not be asked to do anything other than daily living activities. He further clarifies by responding when asked "[are you] of the opinion that there are at least some employment functions that she could perform out of the home?" that "I think she is permanently disabled from any type of work." (R. at 00805-06.) I find that despite the April 17 fax and the isolated comment in his deposition (later contradicted) that telemarketing out of her home would be feasible, Dr. Finn's opinion is that Ms. Deal is unable to perform any job. This opinion, coupled with Dr. Brown's finding that there is no reasonable way to allow Ms. Deal to work, even in a sedentary capacity, indicates that Ms. Deal is totally disabled under the Plan definition.

Other evidence presented by Prudential does not outweigh this evidence that Ms. Deal is totally disabled. Prudential points to

5

a letter from Dr. Clay Canaday stating that he did not believe that Ms. Deal was permanently or totally disabled and that "she could have accomplished sedentary type work." (R. at 00496-503.) Prudential also points to a letter from Dr. Michelle Muellner indicating that "[t]here is no reason she cannot perform gainful work at this time." (R. at 00236.) First of all, Dr. Canaday's letter that Ms. Deal could perform sedentary work indicated that she could only work four hours a day. Second, both Dr. Canaday and Dr. Muellner based their reports on examinations made in 1999, prior to a knee surgery performed by Dr. Finn in 2000, and prior to the reports and comments of Dr. Brown and Dr. Finn.

Prudential also points to various medical findings by Dr. Finn as well as physical therapy reports by Jim Beese. These findings and reports say things like "[s]he has 100 degrees of motion [with] no instability or effusion," (R. at 00301), and "Single leg Partial weight bearing squats to fatigue L24x/R60x with 54 lbs" (R. at 00128). Absent interpretation by medical professionals, such results do not provide support one way or the other regarding Ms. Deal's ability to perform work for which she is reasonably fitted.[1]

---

[1] Prudential argued that an investigation report of Ms. Deal supported its conclusion. The surveillance report is hearsay, depending entirely on comments reportedly stated by neighbors. Even if it was considered, however, it indicates that Ms. Deal is not seen often and that when she walks, she proceeds "in a slow manner." (R. at 00094.)

6

Based on the opinions of Dr. Finn and Dr. Brown, which I find outweigh the evidence presented by Prudential, I find that Ms. Deal is unable to perform any work for which she is reasonably fitted. As a result, Ms. Deal has established that she is totally disabled under the Plan.

B. Benefit Limitation

The Plan also contains a "Benefit Limitation" section that applies "if [the employee's] Disability, as determined by Prudential, is caused at least in part by a mental, psychoneurotic or personality disorder." In that case, benefits are not payable for more than 24 months. (R. at 00167.) As discussed in my decision denying Ms. Deal's motion for summary judgment, Prudential points to two psychology reports indicating that Ms. Deal's disability is caused, at least in part, by mental disorders. *Deal*, 222 F. Supp. 2d at 1072. First, Dr. Caryn Feldman, a psychologist, reported after examining Ms. Deal that "Ms. Deal appears caught in a vicious cycle where pain and depression lead to decreased activity which serves to increase deconditioning and depression, which may aggravate physical symptoms further." (R. at 00523.) Second, after a health psychology evaluation with Ms. Deal, Dr. Melanie Aoki reported that unless her depression and anxiety were directly addressed, her response to medical treatment for her knee pain would likely be compromised. (R. at 00233.)

7

While I previously determined that these reports were sufficient to defeat Ms. Deal's motion for summary judgement, I now find that the evidence does not support application of the mental disorder limitation. The Plan indicates that benefits are limited when the employee's "Disability" is caused in part by a mental disorder. "Disability" is defined as "either Total Disability or Partial Disability." (R. at 00164.) Thus, the issue here is whether Ms. Deal's mental problems caused, at least in part, her Total Disability, i.e., her inability to perform any work for which she is reasonably fitted. In order to show that mental disorders caused, at least in part, Ms. Deal's disability, Prudential must show[2] that absent her mental problems, she would have been able to perform work for which she is reasonably fitted. Prudential fails to make that showing here. While Dr. Feldman's and Dr. Aoki's reports indicate that her depression and anxiety may have worsened her physical problems or at least hindered their treatment, these reports do not indicate that absent her mental problems, she would have been able to work. As noted above, the most relevant evidence regarding her ability to work comes from Dr. Brown and Dr. Finn. Prudential points to the opinion of Dr. Brown that his conclusion that Ms. Deal was incapable of even sedentary work was based on

---

[2] "The burden of proving that a claim falls within an exclusion rests squarely on the insurer." *Hurst-Rosche Eng'rs, Inc. v. Commercial Union Ins. Co.*, 51 F.3d 1336, 1342 (7th Cir. 1995).

consideration of all of Ms. Deal's problems including physical and psychiatric disorders. The only evidence of this statement by Dr. Brown, however, is Prudential's log of a telephone call made by Prudential to Dr. Brown in which Dr. Brown allegedly expressed this opinion. (R. at 00086.) Further, even if Dr. Brown considered both physical and psychological conditions in determining whether Ms. Deal was able to work, consideration of both factors does not indicate that the physical impairments alone were insufficient to render Ms. Deal unable to work. Likewise, Dr. Finn's testimony that anything beyond performing the tasks of daily living adds physical and psychological stress such that Ms. Deal is unable to work does not indicate that her physical condition alone is insufficient to prevent her from working. Because Prudential has not shown that absent her mental condition, Ms. Deal would be able to perform work for which she is reasonably fitted, application of the benefit limitation is unwarranted.

Because Ms. Deal has shown that she has a total disability under the Plan, and Prudential has not shown that the mental disorder benefit limitation applies, Prudential's decision to terminate Ms. Deal's benefits was incorrect. Consequently, Ms. Deal is entitled to her benefits as if they had never been terminated.

### III. Interest and Fees

In addition to her benefits, Ms. Deal seeks pre-judgment interest and attorneys' fees. In this circuit, there is a presumption in favor of awarding prejudgment interest in ERISA cases. *Fritcher v. Health Care Serv. Corp.*, 301 F.3d 811, 820 (7th Cir. 2002). As ERISA contains no statutory prejudgment interest rate, the Seventh Circuit suggests that I use the prime rate for fixing prejudgment interest. *Id.* The average of the monthly averages of the prime rate from July 2001 (the month in which Prudential ceased paying benefits) through April 2003 is 4.92%.[3] Prejudgment interest is thus to be calculated at this rate.

ERISA permits me to award attorneys' fees to a prevailing party. 29 U.S.C. § 1132(g). The Seventh Circuit has indicated that there is a "modest presumption" that prevailing parties are entitled to attorneys' fees. *Bowerman v. Wal-Mart Stroes, Inc.*, 226 F.3d 574, 592 (7th Cir. 2000). Although the test for determining whether an award of attorneys' fees has been stated in various ways, a party must have a "solid basis" for its position, otherwise it has really done nothing more than harass its opponent by putting her through the expense and bother of litigation for no good reason. *Prod. & Maint. Employees' Local 504 v. Roadmaster*

---

[3] The monthly average prime rates for July 2001 through April 2003 were, respectively, 6.75%, 6.67%, 6.28%, 5.53%, 5.10%, 4.84%, 4.75%, 4.75%, 4.75%, 4.75%, 4.75%, 4.75%, 4.75%, 4.75%, 4.75%, 4.75%, 4.35%, 4.25%, 4.25%, 4.25%, 4.25%, and 4.25%. Historic monthly average prime rates are available at http://www.federalreserve.gov/releases/h15/data/m/prime.txt.

*Corp.*, 954 F.2d 1397, 1405 (7th Cir. 1992). I find that Prudential did not have a solid basis for its position, and Ms. Deal is therefore entitled to attorneys' fees. As discussed above, the evidence presented by Prudential to support its position that Ms. Deal was able to perform other work was, although sufficient to defeat summary judgment, extremely weak. The April 17 fax from Dr. Finn and his isolated deposition comment regarding telemarketing were later clarified or contradicted, the letters from Dr. Canaday and Dr. Muellner were based on examinations prior to a later knee surgery, and both Prudential's own doctor, Dr. Brown, and Dr. Finn said Ms. Deal could not work. Also as discussed above, with respect to the benefit limitation section, Prudential completely failed to present evidence showing that absent mental problems, Ms. Deal would have been able to work. Prudential thus has not shown a solid basis for its position, and cannot rebut the presumption of attorneys' fees here.

## IV. Conclusion

Because Ms. Deal has shown that she has a total disability under the Plan definition, and Prudential has failed to show that any benefit limitation applies, Ms. Deal is entitled to benefits under the plan. Prudential is ORDERED to pay benefits retroactively from July 2001 plus 4.92% interest, and to continue paying benefits

11

for as long as Ms. Deal remains eligible. Additionally, Ms. Deal's request for attorneys' fees is GRANTED.

ENTER ORDER:

*[signature]*

**Elaine E. Bucklo**
United States District Judge

Dated:   May 22, 2003